# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KELLY BLAINE CARTER, | ) | CASE NO. 5:22-CV-00367-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant, | | |

## I.    INTRODUCTION

Plaintiff Kelly Blaine Carter ("Carter") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying Supplemental Security Income Benefits ("SSI"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set forth below, I RECOMMEND that the Court OVERRULE Carter's assignments of error and AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

On July 29, 2019, Carter filed an application for SSI, alleging a disability onset date of January 1, 1995. (Tr. 190). Carter's application was denied initially and upon reconsideration, and

Carter requested a hearing before an administrative law judge ("ALJ"). (Tr. 102-08, 112-14, 115-17). On October 19, 2020, an ALJ held a hearing, during which Carter, represented by counsel, and an impartial vocational expert testified. (Tr. 36-75). On December 24, 2020, the ALJ issued a written decision finding Carter was not disabled. (Tr. 7-25). The ALJ's decision became final on January 21, 2022, when the Appeals Council declined further review. (Tr. 1-6).

On March 7, 2022, Carter filed her Complaint challenging the Commissioner's final decision. (ECF Doc. 1). The parties have completed briefing in this case. (ECF Docs. 8, 9, 10). Carter asserts the following assignments of error:

1. The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived her authority from Andrew Saul was constitutionally defective.

2. The ALJ erred when she failed to find persuasive the opinion of the treating psychiatrist, Dr. Christopher Seman, and incorporate the stated limitations in the RFC.

3. The ALJ erred when she failed to find that the waxing and waning of Carter's psychological symptoms would preclude her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF Doc. 8, PageID#576).

### III.    BACKGROUND INFORMATION

#### A.  Personal, Educational, and Vocational Evidence

Kelley Blaine Carter was 41 years old when she appeared at the hearing before the ALJ, and she was 17 years old, at the alleged onset disability date. (*See* Tr. 170). She lives with her two daughters and her fiancé. (Tr. 45). She does not have a driver's license. (Tr. 48). Carter graduated from high school and completed some college courses. (Tr. 48). Approximately nine years before her ALJ hearing, Carter worked at a factory where she painted dog collars, leases, and other similar items. (Tr. 49). In 2006, Carter worked for six months as Tech Support. (Tr. 48).

### B.  Relevant Medical Opinion Evidence

#### 1. *State Agency Medical Consultants - Maurice Prout, Ph.D. and Karla Delcour, Ph.D.*

Dr. Maurice Prout opined that Carter could perform routine, repetitive, and three to four-step tasks with adequate persistence and pace, but would be limited for detailed or complex/technical issues. (Tr. 86). Dr. Prout further opined that Carter could work within a set routine where major changes are explained in advance and gradually implemented to allow her time to adjust to the new expectations. (Tr. 87). Dr. Delcour reached the same conclusion. (Tr. 95-96).

#### 2. *Treating Physicians/Professionals - Christopher Seman, D.O.*

Dr. Christopher Seman, Carter's treating psychiatrist, filled out a Mental Impairment check-box Questionnaire. He diagnosed Carter with bipolar disorder 1, generalized anxiety disorder, Tourette's disorder, panic disorder, and attention deficit disorder. (Tr. 386). He opined that Carter was "unable to meet competitive standards"[1] or had "no useful ability to function"[2] in the following categories: (1) maintaining attention and concentration for extended periods; (2) completing a normal workday and workweek without interruptions from psychologically-based symptoms; (3) performing at a consistent pace without an unreasonable number and length of rest periods; and (4) responding appropriately to criticism from supervisors. (Tr. 386-87). He also opined that Carter's impairments or treatment would cause her to be absent from work 10 days a month. (Tr. 387). He also indicated that Carter would be off task 50% of an eight-hour regular workday. (*Id.*).

---

[1] According to Carter's Mental Impairment Questionnaire, "unable to meet competitive standards" means that the patient "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (Tr. 386).

[2] Carter's Mental Impairment Questionnaire defines "no useful ability to function" as "an extreme limitation, mean[ing] [the] patient cannot perform this activity in a regular work setting." (Tr. 386).

Dr. Seman also submitted an opinion statement to the presiding magistrate in a different court case in which Carter was involved. (Tr. 385). Dr. Seman stated that Carter had been diagnosed with panic disorder, attention deficit disorder mainly inattentive type, bipolar disorder 1, hypomania, and generalized anxiety disorder. (*Id.*). He opined that Carter is "unable to obtain and maintain gainful employment due to her mental illness" and that he did not foresee an improvement in her condition within the next twelve months. (*Id.*).

### C.  Relevant Hearing Testimony

#### 1. *Kelly Blaine Carter*

Carter testified at the hearing. She lives with her two daughters and her fiancé. (Tr. 45). Carter graduated from high school and completed some college courses. (Tr. 48). She does not have a driver's license. (Tr. 48). When asked how she usually reaches locations, Carter testified that the only place she goes is her psychiatrist's office to get her medication, and that her insurance company transports her. (*Id.*). Her fiancé and her 23-year-old daughter would also accompany her. (*Id.*).

Approximately 10 to 12 months prior to her ALJ hearing, Carter went to the emergency room for a panic attack. (Tr. 51). Her ER doctor contacted her psychiatrist and suggested that changes to her medication were necessary. (*Id.*). Carter's treating psychiatrist lost his license, so she obtained her medication from her primary care doctor. (Tr. 53). She testified that she now has a new psychiatrist. (*Id.*). She indicated that Adderall worsened her Tourette's. (Tr. 55). She stated that she does not go to counseling because it did not work for her in the past. (*Id.*)

Carter testified that she smokes half a pack of cigarettes per day. (Tr. 56). She stated that she had "been kind of bad on showers," indicating that she will put off hygiene tasks like a shower for three to five days. (Tr. 58-59). She stated that she does household chores such as doing dishes,

preparing food, sweeping, and mopping the floor two to three times a week. (Tr. 59). Carter orders her groceries and household goods for delivery through a phone app. (*Id.*).

## 2. *Vocational Expert*

Dr. Eric Dennison testified as a vocational expert ("VE") at Carter's ALJ hearing. (Tr. 64-74). The VE testified that a hypothetical person of the same age, education, past work experience, and residual functional capacity ("RFC") as Carter could perform work available in significant numbers in the national economy, including work as a Garment Sorter (22,000 jobs); Dryer Attendant (12,000 jobs); and Cleaner II (38,000 jobs). (Tr. 65). If the person was limited to occasional interactions, the VE stated that the person could still perform the same jobs. (Tr. 65-66). If the person can never interact with the public, the VE opined that she could also still perform the same jobs. (Tr. 66). If the person was limited to the medium level of exertion with no more than frequent exposure to poor ventilation or pulmonary irritants, she could still perform the jobs of Dryer Attendant and Garment Sorter, along with the job of Linen Room Attendant. (Tr. 67). The VE indicated that she could be off task up to 10% of the time. (Tr. 68).

### D.  Relevant Medical Evidence

On April 29, 2019, Carter reported significant anxiety relating to relationship issues associated with domestic abuse. (Tr. 374). She was also dealing with legal issues involving child support and possible contempt charges, which resulted in increased anxiety, depression, and difficulty focusing. (*Id.*). She was prescribed Xanax, Sertraline, Risperdal, and Ritalin. (*Id.*).

On May 14, 2019, Dr. Seman indicated that Carter presented with anxiety, depression, and focus and attentional issues. (Tr. 372). As of June 14, 2019, Carter's Ritalin was working, and her anxiety was under better control. (Tr. 368-69). She reported stabled moods, better control of her anxiety with no tics, and good focus and attention. (*Id.*). By November 15, 2019, Carter was off

task and distractable, and had rapid thoughts and eye blinking tics. (Tr. 366). She reported having panic attacks and increased anxiety. (*Id.*). Her examination showed normal speech and conversation, a logical and relevant through process, normal recent and remote memory, normal attention and concentration, and a normal fund of knowledge. (*Id.*).

On December 6, 2019, the State Agency referred Carter for a psychological consultative examination. (Tr. 301-07). Dr. Bryan Krabbe observed that Carter was nervous with indications of anxiety. (Tr. 304). The doctor also observed that Carter's grooming and hygiene were below average, as Carter appeared disheveled and unkempt with body odor. (*Id.*). She was assessed with major depressive disorder and generalized anxiety disorder. (Tr. 307). Dr. Krabbe noted that Carter had functionally described symptoms of depression and anxiety that could lead to an increase in worry and a decrease in attention and concentration. (Tr. 306-07). He further noted that she presented with body odor that might affect her level of engagement with co-workers and supervisors, and that her depression and anxiety may compromise her ability to respond to work pressures leading to increased emotional instability and agitation. (*Id.*).

On January 3, 2020, upon examination, Carter demonstrated a good mood, good focus and attention, and a less anxious mood and affect. (Tr. 364). On March 27, 2020, Carter's treatment notes indicate similar findings. (Tr. 362). Her examination also showed normal speech and conversation, a logical and relevant thought process, realistic judgment and normal insight, full orientation, normal recent and remote memory, normal attention and concentration, and a normal fund of knowledge. (Tr. 372).

On July 27, 2020, Carter reported that her psychiatrist had lost his license (Tr. 250-52) and she was out of medication. (Tr. 324). As a result, she was having panic attacks every other day, felt highly anxious, and paced around the house. (Tr. 324). Carter was described by her primary

care physician, Jessica Klaus, PA, as "alert and active." (Tr. 325). Carter's primary care physician prescribed short-term medication and referred Carter to a new mental health provider. (*See* Tr. 326). The new provider reported that Carter's symptoms were well-controlled under her medication regimen. (*See* Tr. 343).

On August 11, 2020, Carter visited a local community health center. (Tr. 343). Her visit notes indicated that her Xanax dose had been lowered and her ADHD was well-controlled. (Tr. 342). She was assessed with moderate depression, mixed insomnia, generalized anxiety, and ADHD. (Tr. 343). She presented with the following struggles/symptoms: making impulsive decisions, oppositional attitudes, trouble relaxing, procrastination, remembering appointments, task completion, task initiation, task organization, time management, difficulty staying asleep, spending time in bed not sleeping, daytime somnolence, myalgias, irritable, anxiety, excess worrying, fearful, sense of impending doom, depression, decreased energy, decreased ability to concentrate, decreased motor movements, and loss of interest in usual activities. (*Id.*).

In September 2020, Carter's treatment notes reported a reduced efficacy of Ritalin for her ADHD symptoms. (Tr. 347). She reported difficulty concentrating and completing tasks. (*Id.*). Her anxiety was characterized as under fair to under good control. (Tr. 346). Carter's medication was modified. (Tr. 347).

## IV.     THE ALJ'S DECISION

The ALJ issued a decision on December 24, 2019, concluding in relevant part:

> 1. The claimant has not engaged in substantial gainful activity since June 5, 2019, the application date (20 CFR 416.971 *et seq.*).

> 2. The claimant has the following severe impairments: depressive disorder (diagnosed as major depressive disorder and bipolar disorder); anxiety disorder (diagnosed as general anxiety disorder and panic disorder); attention deficit hyperactivity disorder (ADHD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity, to perform a full range of work at all exertional levels but with certain non-exertional limitations. Specifically, the claimant can perform simple routine tasks, but not at a production rate pace and not with strict production standards. She can interact occasionally with others, with no responsibility for sales, arbitration, negotiation, confrontation, conflict resolution, or the safety or welfare of others. She can adjust to occasional changes in the work setting or routine so long as those changes are explained in advance and implemented gradually.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born [in January 1978] and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.694).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 5, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-21).

## V.    LAW AND ANALYSIS

### A.  Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council

8

becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

## B.  Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

## C.  Discussion

### 1. *Separation of Powers Violation*

Carter argues that the ALJ's decision was constitutionally defective because the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the

separation of powers. For the following reasons, Carter's challenge to the constitutionality of the ALJ's decision lacks merit.

Initially, I note that Carter's Complaint does not include any constitutional claim. (ECF Doc. 1). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A complaint need not provide "detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Id. (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In her merits brief, Carter grounds her constitutional claim in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), decided in June 2020, but failed to give notice of the claim when she filed her complaint in March 2022. Accordingly, her constitutional claim – advanced for the first time in her merit brief (ECF Doc. 8, PageID#583-86) – is procedurally improper. *See, e.g., Hawes v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-02848-DAR, 2022 WL 2346998, at *7 (N.D. Ohio Apr. 15, 2022), *report and recommendation adopted sub nom. Hawes v. Kijakazi*, No. 5:20-CV-02848, 2022 WL 2342642 (N.D. Ohio June 28, 2022).

Even if considered on its merits, however, Carter's constitutional claim fails. Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019, pursuant to 42 U.S.C. § 902(a). *See* Social Security Administration, Executive Bios, Andrew Saul, https://www.ssa.gov/ndf/documents/SSA%20Executive%20Bios-11182020.pdf (last visited Dec. 27, 2022). Section 902(a)(3) provides that "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or

11

malfeasance in office." *Id.* The parties agree that portion of § 902(a)(3) violates the separation of powers because it limits the President's authority to remove the Commissioner as the head of an executive agency. (ECF Doc. 8, PageID#5; ECF Doc. 9, PageID#612); *see also Seila Law LLC*, 140 S. Ct. at 2197 (statutory restriction on the President's ability to remove the head of an agency "for inefficiency, neglect, or malfeasance" violates the separation of powers and is unconstitutional); *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021) (statutory restriction on the President's ability to remove the head of an agency (e.g., "for cause," "neglect of duty, or malfeasance in office") violates the separation of powers and is unconstitutional).

In *Collins*, the Supreme Court considered a similar statute governing the removal of Directors of the Federal Housing Finance Agency ("FHFA"). The majority held that, "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by FHFA . . . as void." 141 S. Ct. at 1787 (emphasis in original).

The Court in *Collins* further found "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. *Id.* at 1788; *id.* at 1778 n.23 (citing *Seila Law*, 140 S. Ct. at 2207-11) ("unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office, including implementing the third amendment"). Rather, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *Id*. at 1788-89. The Supreme Court offered examples of situations where unconstitutional removal restrictions could inflict compensable harm:

Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the status did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id*. at 1789.

Here, Carter claims she did not receive a valid administrative process because the ALJ's authority to make disability determinations was derived from a Commissioner who was subject to an unconstitutional removal provision. (*See* ECF Doc. 8, PageID#585). As in *Collins*, the existence of an unconstitutional removal provision did not strip Commissioner Saul of his authority to carry out the functions of his office, including the authority to delegate disability determinations to ALJs and to implement changes to Agency regulations. Without Carter showing that § 902(a)(3)'s removal restriction inflicted specific, compensable harm on him, remand for a *de novo* hearing is not available to her.

Moreover, Carter does not address the fact that the specific ALJ who presided over her case—Judge Knapp—was not appointed by a Commissioner subject to § 902(a)(3)'s removal restriction, but rather was ratified by an Acting Commissioner who was not tenure-protected. (*See* ECF Doc. 8, PageID#583-86). Because then-Acting Commissioner Berryhill served pursuant to provisions of the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345-3349c, her appointment was not subject to the same constitutional deficiencies as Commissioner Saul. *See* 5 U.S.C. § 3346(a)(1). Then-Acting Commissioner Berryhill had no statutory tenure protections. *See* 42 U.S.C. § 902(b)(4); *see also Collins*, 141 S. Ct. at 1782-83 (citing 12 U.S.C. § 4512(f)) (noting that FHFA's Acting Director was removable at-will because the relevant subsection "does not include any removal restriction. Nor does it cross-reference the earlier restriction on the removal of a confirmed Director."); *United States v. Eaton*, 169 U.S. 331, 343 (1898) ("Because the

subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official. To so hold would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered.").[3]

Because then-Acting Commissioner Berryhill was not the "superior and permanent official" as a confirmed director, she was removable at-will; thus, there is no nexus between then-Acting Commissioner Berryhill's ratification of Judge Knapp's appointment and the unconstitutional provisions of § 902(a)(3). As a result, I conclude that Carter has not shown that then-Acting Director Berryhill or Judge Knapp lacked authority to carry out the functions of their respective offices due to the constitutional defect in § 902(a)(3). *See Collins*, 141 S. Ct. at 1788 n.23 (noting that "unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ").

Other federal courts in this judicial district, this state, and across the country, have concluded that the allegedly unconstitutional appointment of Andrew Saul does not require remand. *See, e.g., Katrina R. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) (collecting cases); *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754, at *9 (N.D. Ohio Dec. 22, 2021). I similarly decline to recommend remand on this basis. Thus, even if Carter's constitutional claim was procedurally proper—which it is not—

---

[3] Carter attempts to recast the nature of her argument by asserting, for the first time, in her reply brief that "[t]he argument raised by Plaintiff, however, was not an [A]ppointments [C]lause challenge." (ECF Doc. 10, PageID#644). Yet, this argument was *not* raised in Carter's merits brief. (*See generally* ECF Doc. 8, PageID#583-86). By failing to properly raise this assertion in her merits brief, Carter has waived this issue. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)(issues raised for the first time in a reply brief are waived); *Hamilton v. Astrue*, 2010 WL 1032646, at *6 (N.D. Ohio Mar. 17, 2010) ("A reply brief is a plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments.").

she has not articulated a specific, compensable harm that he sustained as a result of the unconstitutional removal provision in § 902(a)(3). As a result, Carter's first assignment of error lacks merit.

### 2. *The Persuasiveness of Dr. Seman's Opinion*

#### a. <u>Legal Standard</u>

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's residual functional capacity ("RFC") after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [she] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2).[4] According to the regulation, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

#### b. <u>Parties' Arguments</u>

Carter argues that ALJ erred by "fail[ing] to find persuasive the opinion of the treating psychiatrist, Dr. Christopher Seman, and incorporate the stated limitations in his RFC." (ECF Doc. 8, PageID#586). She asserts that it is unclear from the record how the ALJ determined that Carter

---

[4] Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5).

could engage in substantial gainful activity on a full-time and sustained basis. (*Id.*). She argues that the ALJ's conclusion that Dr. Seman's opinion was unpersuasive because it was unsupported by or consistent with his treatment notes is contrary to the evidence in the record. (*Id.*). Carter cites to the following record evidence as being consistent with Dr. Seman's opinion:

- On May 14, 2019, Dr. Seman indicated that Carter presented with anxiety, depression, and focus and attentional issues. (Tr. 372).

- On June 14, 2019, Carter's Ritalin was working and her anxiety was under better control. (Tr. 368).

- By November 15, 2019, Carter was off task and distractable with poor follow through, was off task, and had rapid thoughts and eye blinking tics. (Tr. 366). She reported having panic attacks and increased anxiety. (*Id.*).

(ECF Doc. 8, PageID#591-92). Based on this evidence, Carter contends that the ALJ erred by finding that the statement of the treating source was not persuasive and failing to give a coherent explanation for the ALJ's reasoning. (*Id.* at 592). Carter argues that this matter should be remanded because the ALJ did not adequately explain her findings regarding the supportability, consistency, and persuasiveness of Dr. Seman's opinion. (*Id.*). Specifically, Carter contends that the ALJ did not build an accurate and logical bridge between the evidence documenting Carter's disabling problems as set forth in the record and the ALJ's decision that she could engage in substantial gainful activity on a sustained basis. (*Id.* at 593).

The Commissioner asserts that the ALJ adequately analyzed Dr. Seman's opinion and properly determined the treating psychiatrist's opinion was not consistent with or supported by the record. (ECF Doc. 9, PageID#622). The Commissioner first contends that Dr. Seman's opinion was a check-box opinion. (*Id.* at 623-24). The Commissioner also states that Dr. Seman's opinions regarding absences and breaks at a work-preclusive frequency are not entitled to special consideration because an opinion of disability is an issue reserved to the Commissioner. (*Id.* at

16

624-25). For these reasons alone, the Commissioner contends that Dr. Seman's opinion was not supported by substantial evidence. (*Id.*). Even setting aside the asserted flaws with Dr. Seman's opinion, the Commissioner argues that the ALJ adequately explained her reasons for finding Dr. Seman's opinion unpersuasive. (Tr. 625-29).

In Carter's reply brief, she contends that the Commissioner admitted that the record supported her allegations of mental health symptoms associated with her depression, anxiety, and ADHD. (ECF Doc. 10, PageID#638). She then asserts that the Commissioner argued that the severity of her symptoms and resulting limitations were not supported by the medical evidence. (*Id.* (citing ECF Doc. 9, PageID#628)). Carter argues thatthe Commissioner relied on pages in the record that were not mentioned by the ALJ when the ALJ discussed the persuasiveness of Dr. Seman's opinion. (*Id.* at 639 (citing Tr. 18-19)). Thus, Carter contends that the Commissioner's arguments are a *post hoc* rationalization to justify the ALJ's failure to support the ALJ's conclusion regarding the persuasiveness of Dr. Seman's opinion. (*Id.*). Furthermore, she asserts that the Commissioner's attempt to salvage the ALJ's failure to properly consider the persuasiveness of the treating source should not save or cure the ALJ's deficiencies. (*Id.*). Accordingly, she argues that a remand is necessary. (*Id.*).

### c. The ALJ's Opinion

The ALJ analyzed Dr. Seman's opinion as follows:

In May 2019, the month before the start of the relevant period, the claimant's treating psychiatrist, Christopher Seman DO, reported that he supports the claimant seeking disability due to her mood disorder and panic disorder (6F:18). At that office visit Dr. Seman noted that the claimant presented with anxiety, depression and focus and attentional issues and went on to further state that she was dealing with "huge family stressors" (6F:17). However, the mental status examination showed normal speech, appropriate mood and affect, logical and relevant thought processes, normal thought content, realistic judgment with normal insight, full orientation, normal memory, normal attention span and concentration, and a normal fund of knowledge (6F:17).

Dr. Seman also submitted an opinion statement directly to the presiding magistrate over the claimant's ongoing court case. He opined that the claimant is "unable to obtain and maintain gainful employment due to her mental illnesses" and that he did not foresee an improvement in her condition within the next six months (7F:1). The doctor assessed the claimant as primarily "seriously limited, but not precluded" in the area of sustained concentration and persistence (7F:2). Regarding understanding and memory limitations, Dr. Seman opined a serious limitation regarding detailed instructions but less than serious limitations regarding simple instructions and work-like procedures (7F:3). Regarding social interaction, the claimant was opined as at least seriously limited regarding interacting with supervisors and coworkers, but less limited when interacting with the general public. Finally, in adaptation, Dr. Seman opined no serious limitations. The doctor concluded his opinion by estimating that the claimant would miss 10 days of work each month and be off-task 50% of each workday (*Id.*).

The undersigned does not find Dr. Seman's opinion persuasive as it is not supported by or consistent with his own treatment notes. As discussed above, the doctor's regular examinations note minimal findings upon mental status examinations. However, the undersigned does note that this opinion was made during a time of considerable life stressors for the claimant, which correlated with an increase in her symptoms. Thus, while the claimant may have been so limited at that moment in time, in May 2019, the treatment notes show improvement with treatment by the start of the relevant period and further document the waxing and waning of symptoms based on significant life stressors and/or breaks in treatment. The remainder of the record shows that minimal findings that are not consistent with Dr. Seman's opinion.

(Tr. 18-19).

### d.  Analysis

The ALJ did provide an explanation for finding Dr. Seman's unpersuasive: that his opinion was not supported by or consistent with his own treatment notes. (Tr. 18-19).. The ALJ stated that the doctor's regular examinations note minimal findings upon mental status examinations. (*Id.*). The ALJ also noted that Seman's May 2019 opinion was made during a time of considerable life stressors for Carter. (*Id.*).  While acknowledging Carter may have been limited at certain moments in time, the ALJ ultimately determined that the treatment notes show improvement with treatment by the start of the relevant period and further document the waxing and waning of symptoms based on significant life stressors and/or breaks in treatments. (*Id.*). Thus, the ALJ concluded that the

18

remainder of the record showed minimal findings that are not consistent with Dr. Seman's opinion. (*Id.*).

While it is clear that the ALJ found Dr. Seman's opinion inconsistent and unsupported by Dr. Seman's own treatment notes, it is not as clear how the ALJ arrived at those conclusions because the ALJ did not explain in this section which of Dr. Seman's treatment notes were inconsistent with his opinion or identify with any degree of specificity what other medical evidence the ALJ believed was inconsistent with Dr. Seman's findings. Although the ALJ found that the treatment notes are inconsistent with Dr. Seman's opinion, the ALJ does not explain what limitations are specifically unsupported or inconsistent with the treatment notes.

The Commissioner attempts to fill the gap in the ALJ's reasoning by arguing that check-box opinions are generally deemed unsupported by courts in this circuit and pointing to treatment notes from Dr. Seman that were inconsistent with Dr. Seman's opinion. (*See* ECF Doc. 9, PageID#625-29). However, the ALJ did not find that Dr. Seman's opinion was an improper check-box opinion. Even if the court were to agree that the evidence the Commissioner cites supports the ALJ's conclusion, the ALJ did not cite or otherwise refer to that evidence in explaining why she found Dr. Seman's opinion unsupported or inconsistent. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action … It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." (citation omitted)). Put simply, the ALJ did not build an accurate and logical bridge between the evidence and the result, leaving it instead for this court to infer the basis for her decision. *Fleischer*, 774 Supp. 2d at 877.

Yet, the ALJ's failure to comply with the regulation's articulation requirements is ultimately harmless error. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An

error in an ALJ's evaluation of the opinion evidence may be harmless in one of three circumstances: (1) when the opinion was "so patently deficient that the Commissioner could not possibly credit it"; (2) when the Commissioner made findings consistent with the opinion; or (3) the Commissioner otherwise met the goals of the regulations by indirectly attacking the supportability or consistency of the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 440 (6th Cir. 2010).

The Commissioner correctly asserts that the first of these circumstances is applicable here. The Sixth Circuit has found physician opinions "patently deficient" when they involve check-box analysis … not accompanied by any explanation." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 474-75 (6th Cir. 2016) (citation omitted). A checkbox form may be inherently deficient even when the ALJ does not "expressly cite the unsupported checkbox form as a basis" for rejecting the opinion. *See Gallagher v. Berryhill*, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017) (citing *Hernandez*), *adopted sub nom. Gallagher v. Berryhill*, 2017 WL 2791106, at *1 (N.D. Ohio June 27, 2017).

Here, Dr. Seman's mental impairment questionnaire for Carter included some blank fields and a series of check boxes. On this form, he indicated that Carter had been visiting him once every one to three months for four years. (Tr. 386). He listed the following diagnoses: bipolar disorder 1, generalized anxiety disorder, Tourette's disorder, panic disorder, and attention deficit disorder. (*Id.*). He also listed Carter's prescribed medication and potential side effects that could have implications for employment. (*Id.*). When asked to describe the clinical findings, including results of Carter's mental status examination that demonstrate the severity of Carter's mental impairment symptoms, he wrote "P[atient] has very high levels of anxiety." (*Id.*). He then checked boxes indicating that Carter is "unable to meet competitive standards" in the following categories:

maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and accepting instructions and responding appropriately to criticism from supervisors. (Tr. 386-87). He also checked boxes indicating that Carter would be "seriously limited, but not precluded" in the following categories: carrying out detailed instructions; performing activities within a schedule; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them, understanding and remembering detailed instructions; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 386-87). He checked boxes indicating that Carter had "no useful ability to function" in the following category: complete a normal workday and workweek without interruptions from psychologically based symptoms." (Tr. 386). He also opined that Carter would be absent from work 10 days a month and would be off task for 50 percent of a regular work day. (Tr. 387). Although Dr. Seman's form provides some detail beyond a mere check-box form, his form provides minimal explanation, if any, for his checked mental limitations for Carter.

Responding to the Commissioner's argument, Carter contends that Dr. Seman's questionnaire was accompanied by a letter noting that, in his professional opinion, Carter was unable to obtain and maintain gainful employment. (ECF Doc. 10, PageID#639 (citing Tr. 385)). Moreover, on the form itself, she asserts that Dr. Seman indicated that Carter had very high levels of anxiety with a fair to guarded prognosis. (*Id.* (citing Tr. 386)). She also contends that the remaining treating or examining sources described the fact that Carter was off task and distractable. (*Id.* (citing Tr. 344, 346, 306-07)).

21

The letter that Carter cites lists mainly the same diagnoses from Carter's mental impairment questionnaire and opines that Carter is "unable to obtain and maintain gainful employment due to her mental illnesses." (Tr. 385). Significantly, it does not reference any medical findings that explain Carter's limitations. (*See id.*). Although the form indicates that Carter had "very high levels of anxiety" and a "fair to guarded prognosis," Dr. Seman fails to reference any treatment notes in support of this statement. (*See* Tr. 386). While Carter points to treatment notes that *may* support Dr. Seman's findings, none of these findings were referenced or attached by Dr. Seman in Carter's mental impairment questionnaire. (*See generally* Tr. 386-87). Accordingly, Dr. Seman's lack of explanation for his findings rendered his opinion patently deficient. *See Duke v. Comm'r of Soc. Sec.*, No. 21-CV-39, 2022 WL 1075171, at *4 (N.D. Ohio Apr. 11, 2022)(finding that medical opinion with blank fields provided some description beyond a mere check-box form but patently deficient because the form itself did not explain the claimant's limitations); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016); *Burgess v. Comm'r of Soc. Sec.*, No. 19-13243, 2021 U.S. Dist. LEXIS 58803, at *15 (E.D. Mich. Mar. 29, 2021); *see also Fleming v. Comm'r of Soc. Sec.*, No. 4:10-CV-25, 2011 U.S. Dist. LEXIS 81040, at *28 (E.D. Tenn. July 5, 2011). Therefore, any claimed error the ALJ may have made in evaluating Dr. Seman's opinion was harmless.

Because Dr. Seman's opinion could not be credited, Carter has failed to establish reversible error in the ALJ's evaluation of Dr. Seman's opinion. Thus, no remand is warranted based on Carter's challenge to the ALJ'S evaluation of the opinion evidence. Accordingly, I recommend that Carter's second assignment of error be rejected.

### 3. *The ALJ Appropriately Considered Carter's Mental Health Symptoms.*

Carter argues that the ALJ erred "when she failed to find that the waxing and waning of Carter's psychological symptoms would preclude her from engaging in substantial, gainful activity on a full-time and sustained basis." (ECF Doc. 8, PageID#593). Within this argument, she raises three sub-claims: (1) the ALJ's interpretation and definition of moderate versus marked in analyzing whether Carter's impairments met or medically equaled Listing 12.00's criteria was erroneous; (2) the ALJ erred because the record evidence demonstrated that Carter was unable to independently and effectively sustain the crucial activities of daily living and engage in substantial gainful activity on a sustained and full-time basis; and (3) the ALJ failed to consider Carter's "waxing and waning" mental health symptoms in the ALJ's analysis. (*See id.* at 593-97).

### a. <u>Waived Arguments</u>

Carter's first two sub-claims should be waived. First, she asserted that the ALJ erred in her interpretation and definition of moderate versus marked in analyzing whether Carter's impairments met or medically equaled to Listing 12.00. (ECF Doc. 8, PageID#593-96). She cites to the following evidence:

- On May 14, 2019, Dr. Seman indicated that Carter presented with anxiety, depression, and focus and attentional issues. (Tr. 372).

- As of June 14, 2019, her Ritalin was working, and her anxiety was under better control. (Tr. 368).

- By November 15, 2019, Carter was off task and distractable with poor follow through and had rapid thoughts and eye blinking tics. (Tr. 366). She reported having panic attacks and increased anxiety. (*Id.*).

- On July 27, 2020, Carter reported that her psychiatrist lost his license and she was out of her medication. (Tr. 324). As a result, she reported experiencing panic attacks every other day, feeling highly anxious, and pacing around the house. (*Id.*).

- On August 11, 2020, Carter presented to a local community health center. The visit notation indicated that her Xanax dose had been lowered with her ADHD well-

controlled. (Tr. 342). She presented with the following struggles/symptoms: making impulsive decisions, oppositional attitudes, trouble relaxing, procrastination, remembering appointments, task completion, task initiation, task organization, time management, difficulty staying asleep, spending time in bed not sleeping, daytime somnolence, myalgias, irritable, anxiety, excess worrying, fearful, sense of impending doom, depression, decreased energy, decreased ability to concentrate, decreased motor movements, and loss of interest in usual activities. (*Id.*).

- During her September 2020 appointment, Carter reported that she was not sure the Ritalin was working as she had not been able to concentrate, focus, or stay on task. (Tr. 347).

- On December 6, 2019, the State Agency referred Carter for a psychological consultative examination. (Tr. 301-07). Dr. Krabbe observed that Carter was nervous with indications of anxiety. (Tr. 304). The doctor also observed that Carter's grooming and hygiene were below average as she appeared disheveled and unkempt with body odor. (*Id.*). She was assessed with major depressive disorder and generalized anxiety disorder. (Tr. 307). Dr. Krabbe noted that Carter had functionally described symptoms of depression and anxiety that could lead to an increase in worry and a decrease in attention and concentration. (Tr. 306-07). He further noted that she presented with body odor that might affect her level of engagement with co-workers and supervisors, and that her depression and anxiety may compromise her ability to respond to work pressures leading to increased emotional instability and agitation. (*Id.*).

Here, Carter has not adequately demonstrated how she meets or medically equals the listing's criteria. Carter points to symptoms and observations, but she wholly fails to explain how her cited evidence qualifies as a "marked" limitation. (*See* ECF Doc. 8, PageID#593-94). Instead, she conclusorily states:

The evidence in this matter, as documented above, supported the fact that Carter was seriously limited in her ability to function independently, appropriately, effectively, and on a sustained basis in her ability to understand, remember or apply information, interact with others, and adapt or manage herself. The crucial fact is that the evidence demonstrated, as described above, that Carter was able to independently and effectively sustain the crucial activities needed to complete her activities of daily living and engage in substantial gainful activity on a sustained and full-time basis. She was distractable, impulsive, irritable, and was unable to concentrate, focus, or stay on task. In addition, her appearance was unkempt with body odor." (*Id.* at 596).

Yet Carter fails to articulate how she meets or medically equals the listing's criteria for each disputed category, nor does she cite any case law in support of this assertion. (*See id.* at 595-96).

Second, Carter asserts that even if she could complete some activities, Ohio courts have held that the ability to perform some activities on a limited basis is not substantial evidence that a claimant's symptoms were not disabling. (citing *Lorman v. Comm'r of Soc. Sec.*, 107 F.Supp.3d 829, 838 (S.D. Ohio 2015) and *Aubin v. Comm'r of Soc. Sec.*, 2022 WL 138080, at *12 (N.D. Ohio Jan. 14, 2022)). She contends that the ALJ erred when the ALJ failed to consider the combination of Carter's impairments and find that she was unable to engage in full-time sustained work activity. Accordingly, she asserts that this matter requires a remand for consideration of the totality of the evidence regarding Carter's impairments, and whether the combination of her symptoms would preclude her from being able to engage in substantial gainful activity on a sustained basis.

With respect to Carter's daily activities argument, she fails to indicate what portion of the ALJ's decision she is attacking or what step in the sequential process that she is challenging. (*See generally* ECF Doc. 8, PageID#596-97). Nor does she identify any record evidence in support of her argument. (*Id.*). Because Carter fails to point to what specifically in the ALJ's decision she is challenging and fails to explain how the case law she cites is applicable to her case, I recommend that this argument be waived. It is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *Hough v. Comm'r of Soc. Sec.*, No. 12-14678, 2014 WL 764634, at *9 (E.D. Mich. Feb. 25, 2014) (relying on *McPherson* when noting plaintiff did not sufficiently present her claimed errors); *Ray v. Saul*, No. 1:19-cv-01880, 2020 WL 5203493, at *10 (N.D. Ohio Sept. 1, 2020) (finding conclusory and undeveloped arguments waived).

Because Carter has failed to properly develop these arguments, the Court should deem them waived.

### b.  Consideration of Waxing and Waning Mental Health Symptoms

Finally, Carter argues that the ALJ failed to consider the "waxing and waning" mental health symptoms, pursuant to *Keyse v. Saul*, No. 1:19cv2495, 2021 WL 1214691, at *20 (N.D. Ohio Mar. 31, 2021). (ECF Doc. 8, PageID#593). In support of her argument, she cites to the following record evidence:

- On May 14, 2019, Carter met with Dr. Seman. Dr. Seman indicated that she presented with anxiety, depression, and focus and attentional issues. (Tr. 372).

- As of June 14, 2019, Carter's Ritalin was working, and her anxiety was under better control. (Tr. 378).

- By November 15, 2019, Carter was off task and distractable, and had rapid thoughts and eye blinking tics. She was having panic attacks and increased anxiety. (Tr. 366).

- On July 27, 2020, Carter reported that her psychiatrist had lost his license (Tr. 250-52) and she was out of medication. (Tr. 324). As a result, she was having panic attacks every other day, felt highly anxious, and paced around the house. (Tr. 324).

- On August 11, 2020, Carter visited her local community health center. Her visit notes indicated that her Xanax dose had been lowered and her ADHD was well controlled. (Tr. 342). She assessed with moderate depression, mixed insomnia, generalized anxiety, and ADHD. (Tr. 343). She presented with the following struggles/symptoms: making impulsive decisions, oppositional attitudes, trouble relaxing, procrastination, remembering appointments, task completion, task initiation, task organization, time management, difficulty staying asleep, spending time in bed not sleeping, daytime somnolence, myalgias, irritable, anxiety, excess worrying, fearful, sense of impending doom, depression, decreased energy, decreased ability to concentrate, decreased motor movements, and loss of interest in usual activities. (*Id.*).

- On December 6, 2019, the State Agency referred Carter for a psychological consultative examination. (Tr. 301-07). Dr. Krabbe observed that Carter was nervous with indications of anxiety. (Tr. 304). The doctor also observed that Carter's grooming and hygiene were below average as she appeared disheveled and unkempt with body odor. (*Id.*). She was assessed with major depressive disorder

26

and generalized anxiety disorder. (Tr. 307). Dr. Krabbe noted that Carter had functionally described symptoms of depression and anxiety that could lead to an increase in worry and a decrease in attention and concentration. (Tr. 306-07). He further noted that she presented with body odor that might affect her level of engagement with co-workers and supervisors, and that her depression and anxiety may compromise her ability to respond to work pressures leading to increased emotional instability and agitation. (*Id.*).

Based on this cited evidence, Carter contends the ALJ erred because the ALJ did not consider the entire record regarding the waxing and waning of symptoms, which prevents the Court from determining whether substantial evidence supported the ALJ's decision. (ECF Doc. 8, PageID#596).

The Commissioner asserts that the ALJ properly considered Carter's waxing and waning mental health symptoms. The Commissioner argues that the ALJ acknowledged, and discussed in detail, Carter's mental health symptoms throughout the relevant period, including expressly discussing the reasons for any waxing and waning of those symptoms. (ECF Doc. 9, PageID#629-30 (citing Tr. 19)). In the ALJ's discussion of the record evidence, the Commissioner asserts that the ALJ explained how the record reflected that treatment interruption and times of extraordinary life stressors explained any waxing and waning of Carter's symptoms during the relevant period. (*Id.* (citing Tr. 16-19)). Further, the Commissioner argues that the ALJ provided legally valid and factually supported reasons for rejecting Carter's claims of disabling symptoms-waxing, waning, or otherwise. (*Id.* (citing Tr. 16-19)). Because the ALJ properly articulated her reasoning and this reasoning was supported by substantial evidence, the Commissioner argues that Carter's assignment of error fails. (*Id.*).

I find that the Commissioner's argument is well-taken. Initially, Carter acknowledges (ECF Doc. 8, PageID#596), that the ALJ considered Carter's mental health symptoms, including her waxing and waning mental health symptoms, during the relevant time period. (Tr. 16-19).

Specifically, the ALJ noted that there were times where Carter's symptoms were heightened during the relevant period and that those periods were associated with breaks in treatment or significant life stressors. (Tr. 17). For example, the ALJ noted that in July 2020, Carter reported an increase in her symptoms with panic attacks every other day, high anxiety, and pacing around her house. The ALJ also noted a September 2020 treatment note, which Carter also cites in her merits brief (ECF Doc. 8, PageID#594), that showed a reduced efficacy of Ritalin for Carter's ADHD symptoms. (Tr. 347). The ALJ stated that this treatment note also indicated that Carter reported difficulty concentrating and completing tasks, but her anxiety was characterized as under fair to good control. (*Id.*).

Yet, the ALJ also noted that extraordinary life stressors explained any waxing and waning of Carter's mental health symptoms during the relevant period. (Tr. 16-18). For example, the ALJ discussed that in January 2019, Carter reported significant anxiety stemming from relationship issues associated with domestic abuse. (Tr. 17, 378). In April 2019, she reported struggling to deal with legal issues, including a child support hearing, civil legal proceedings, and facing legal contempt. (Tr. 374, 375). In May 2019, Carter presented with anxiety, depression, and focus and attentional issues. (Tr. 372). At that time, she had "huge family stressors" with child support and possible legal contempt charges for her children that she is no longer able to see. (*Id.*). Carter was prescribed Xanax, Sertraline, Risperdal, and Ritalin. (*Id.*). By June 2019, the start of the relevant period, Carter reported stable moods, better control of her anxiety with no tics, and good focus and attention. (Tr. 368-69).

The ALJ further noted that Carter's heightened symptoms during the relevant period were associated with not having her appropriate medications. (Tr. 17). For example, the ALJ discussed how in November 2019 Carter's reported distractability, panic attacks, and rapid thoughts took

place after her Xanax dose was reduced. (Tr. 366). After another Xanax dose modification, her following examination showed good moods with good attention and focus. (Tr. 364). Her psychiatrist also observed a less anxious mood and affect upon examination. (*Id.*).

The ALJ also discussed Carter's July 2020 visit, the same evidence that Carter cites, and how Carter reported an increase in her symptoms with panic attacks every other day, high anxiety, and pacing around her house. (Tr. 17, 324). The ALJ noted that this increase occurred when her psychiatrist had his medical license suspended, which resulted in her stopping/running out of medication. (Tr. 17). Her primary care physician prescribed short-term medication and referred Carter to a new mental health provider. (Tr. 326). Carter's new mental health provider subsequently reported that her symptoms were well-controlled under her medication regimen. (*See* Tr. 343).

The ALJ also discussed her September 2020 treatment note that indicated reduced efficacy of Ritalin for Carter's ADHD symptoms. (Tr. 347). The ALJ noted, as Carter also cites above, that Carter reported difficulty concentrating and completing tasks. (*Id.*). Yet, as the ALJ stated, her anxiety was characterized as under fair to under good control. (Tr. 346). At that point, Carter's medication was modified (Tr. 347), but the ALJ noted it was unclear how Carter responded to this change due her treatment's recency. (Tr. 17).

Carter's citation to *Keyse* is unavailing. In *Keyse*, the district court identified numerous errors in the ALJ's decision. One error was the ALJ's evaluation of the claimant's treating psychiatrist's opinion. *Keyse*, 2021 WL 1214691, at *20. The court found that the ALJ ignored the psychiatrist's assessment that the claimant's mental health symptoms "wax[ed] and wan[ed]" because the claimant stopped taking antidepressants. *Id.* The psychiatrist explained that the claimant could not tolerate antidepressants. *Id.* Here, Carter does not cite opinion evidence, or any

other type of evidence, showing that she could not tolerate taking her medications. Thus, *Keyes* does not aid Carter's argument. As demonstrated above, the ALJ adequately addressed Carter's mental health treatment history, including her symptoms and medication changes. (Tr. 16-19).

While Carter cites some evidence in support of her position, the ALJ provided ample substantial evidence to support her ruling. To demonstrate lack of substantial evidence, Carter must do more than "pointing to evidence of the record that supports her position." *See Walters v. Comm'r of Soc. Sec.*, No. 1:18-cv-1647, 2019 WL 2212635, at *8 (N.D. Ohio May 22, 2019). Rather, Carter must demonstrate that "there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Based on the evidence and reasoning presented by the ALJ, I conclude that there is substantial evidence to support the ALJ's conclusion. Accordingly, I recommend that the Court reject Carter's final assignment of error.

## VI.     RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that the Court OVERRULE Carter's assignments of error and AFFIRM the ALJ's decision.

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: January 6, 2023

  *s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

31